Good morning, your honors, and may it please the court. I am Andrew Butaro, and my firm represents the appellant, Pulmosan Safety Equipment Corporation. The default judgment entered by the trial court should be vacated because it is based on service of process upon a dead person. The person purportedly served by the Bells, Howard Weiss, was deceased at the time of service. Therefore, service was never properly effected, the trial court never attained jurisdiction over Pulmosan, and the judgment entered against Pulmosan was void. The trial court's order denying Pulmosan's motion to vacate the default judgment and the default judgment itself should be reversed for two main reasons. First, a dead person cannot be served, a dead person's agent cannot be served, and a corporation cannot be served through a dead person. Okay, what statute or case says that? Your honor, in support of that proposition, we are citing common law principles. The second argument is that Howard Weiss was never... So, in other words, you haven't, there's no statute and there's no case that says the proposition you just presented. Well, actually, your honor, it's twofold. So, the common law agency principles preclude service in this manner because of the proposition that an agent's authority terminates upon the death of a principal. But service in this case was also purported to be effected under Arkansas Rule of Civil Procedure 4. And under that rule, subdivision DA1, which is a relevant provision here, service can only be effected upon a general agent of a corporation by restricted delivery mail, was actually employed in this case, then the doorman would not have been able to accept service in the process. But which jurisdiction's law controls the requirement for service in this case? We've got Arkansas involved, we've got New York involved, we've got the federal rules involved. Which rules control the process? You're exactly right, your honor. There's a few different jurisdictions. So, for service of process, we start with Federal Rule of Civil Procedure 4. And we know that that permits service upon a corporation in the same manner as service upon an individual. That means that the law of the forum state or the law of the service state can be used to effectuate service. Now, here, the summons was issued by the federal district court. So, you're saying it only needs to be, it only needs to work under one. If it works under any one, it's sufficient? Well, here we have to consider the law of multiple jurisdictions, I think, because service was attempted to be effected under Arkansas Rule of Civil Procedure 4. But New York business corporation law also dictates service of process requirements upon a corporation. So, in that sense, New York law is also relevant to the service of process issue. But you just have to find one statute that will allow this, and that's good enough, is what Chief Judge Smith's point is, right? That's, if service comports with the relevant statutes, then yes, that would be correct. And so, if it comports with the statutes as outlined in Rule 4, that would be correct. But here, service failed both for the common law reason I mentioned, and also was without statutory organization. And I would invite the court to take a look at Arkansas Rule of Civil Procedure 4. And by way of reference, that's contained in the addendum to the Bell's Arkansas Rule of Civil Procedure 4 outlines different service of process requirements upon a corporation, depending upon whether a corporation's registered agent is being served, or whether a general agent of the corporation is being served. And when I use the term general agent of a corporation, I'm using the definition in Subdivision D-5, which is cited within Subdivision D-8. If the registered agent of a corporation is being served, then service may be affected by certified mail return receipt requested. If a registered agent is not being served, then service must be by restricted delivery mail. What does this mean? This means that the service of process requirements upon a registered agent are less onerous than they are for a general agent of a corporation. Now, in this case, the Bell's purported to effectuate service on Pulmoson via Howard Weiss under Subdivision D-8A1, as if Howard Weiss were a registered agent of Pulmoson. But Howard Weiss was not a registered agent of Pulmoson. There is no record evidence supporting the notion that he's a registered agent of Pulmoson. And in fact, the district court, in denying Pulmoson's motion to vacate, even conceded that Howard Weiss... He was dead, wasn't he? He was dead. Howard Weiss died... I mean, nobody was served, right? That's exactly right. So that's the end of the case, isn't it? Your Honor, I completely agree with that. I would simply say that it's remarkable that service here failed on two levels. Even if Howard Weiss were alive on January 18th, 2014, service would have been technically improper. I understand. But of course, the due process violation inherent in serving a dead person is, for us, the primary issue. And that's what we originally brought to the court's attention. One of the things that the district court said was, well, what else were they supposed to do? Well, one thing they could have done is serve the Secretary of State in New York, right? That's exactly right. That's hornbook law, isn't it? That's true of every state that I know of. It's true of all jurisdictions I know of. I know that for... I don't understand the district court's assertion that there wasn't any other way to do this. We were confused as well, Your Honor. And New York Business Corporation Law, Section 304 through 306, established the Secretary of State as an agent for service of process on all New York corporations. And there's also case law holding that service of process may be affected on a dissolved corporation via the Secretary of State. So regardless of Pomosan's corporate status, service of process could have been affected through the Secretary of State. But you can complete your answer to... And I was simply going to add that New York law also holds that upon receipt by the Secretary of State, service is complete under New York law. The doorman signed for Pomosan, correct? Didn't he sign the... Isn't the receipt say Pomosan? We would reject that characterization, Your Honor. We would say that the doorman signed on behalf of Howard Weiss, who was the tenant in the residential building in which the doorman worked. Now, the service was addressed to Pomosan via Howard Weiss, and service had to be addressed to a natural person. As required by Arkansas rule of civil procedure four. So the doorman himself only had any sort of relationship, agency or otherwise, with Howard Weiss. He never had any independent agency relationship with Pomosan. So there's no way under New York law that he could be in any way appointed by law for Pomosan because he was working for Weiss? No, Your Honor. I don't... There has been no case law support for that proposition. There are some cases supporting the notion that a doorman may accept service of process on behalf of another individual. I cited in briefing Ryden Miller, who discussed this proposition inside some cases. But what's interesting is that in this case, even the cases that have been discussed in briefing and in fact cited by the district court, don't stand for the proposition here. And the proposition here is that a doorman can accept service of process on behalf of a corporation. For instance, the Bozoza decision that the trial court cited stated that, well, a doorman may accept service of process on behalf of individuals. There was no evidence that the doorman was authorized to accept service of process on behalf of the corporation. So I would argue that, frankly, the balance of that case set by the trial court really controls for Pomosan. How is Pomosan receiving notice and other service in other cases since the death of Mr. Weiss? Your Honor, I only represent Pomosan in this specific case, so I can't speak necessarily to what's not part of the record at all. No, it's not part of the record. Opposing counsel in briefing has argued that he had served Pomosan in previous cases by affidavit. He testified that he's been serving Pomosan via Howard Weiss since 2003. But we're not objecting to previous methods of service necessarily. In all those cases, Pomosan appeared. There's no evidence that Pomosan was served via Howard Weiss after his death. But Howard Weiss's death is, of course, a very significant issue for the propriety of service of process, and that's what we've been arguing all along. And Judge Kelly, to your point, even though I can't necessarily speak to what's going on in other cases, I can tell you that as discussed, the New York Secretary of State would be a proper recipient of service of process as I read the rules. And I would invite the court to keep in mind two overarching background themes here. And the first theme is that all judgments are disfavored by the law. And the second broad theme is that Arkansas requires strict compliance with service of safeguard due process. And I would submit to the court that in this case, the bells are essentially asking the court to flip those two presumptions. And they're asking the court to overlook improper service of process in order to salvage a default judgment. And that approach and that result contradicts both this court's presumptions and this court's precedent. Unless the panel has additional questions, I'll reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Buttaro. Mr. Martin. Good morning, your honors, may it please the court. My name is Mike Martin and I represent the Bell family in this matter. I think that the key distinction here that I would start off discussing and listening to Pomasan's argument is simply stated that Pomasan, for purposes of this case, is not dead. And we did not serve an individual. Howard Weiss is not a party and has never been a party. But you didn't serve Howard Weiss. Well, only because of his demise. We served. And I think what Judge Kelly pointed out to in the earlier argument that can be found on page 145 of the record is that if you look at the green card, we served Pomasan Safety Equipment Corporation. Howard Weiss is the agent for Pomasan Safety Equipment. But he wasn't there. He wasn't there. But that doesn't mean Pomasan Safety Equipment wasn't there. Registered agents die. Corporate officers die. So it's your position that the doorman succeeded Mr. Weiss as an agent for Pomasan? He had apparent authority because as on page 267 of the record, Mr. Figueroa testifies, he had not been instructed otherwise to cease accepting service on behalf of Pomasan. The agency died if there was one. I'm not sure that the doorman was ever Weiss's agent, but I'm not sure the record would support that. But if he were, the death of Weiss would revoke the agency, would it not? Not for purposes of service, Your Honor. If you look at Wal-Mart versus Crist, this court's opinion interpreting Arkansas law from I can't remember the year. The question is whether a reasonable, prudent person would naturally suppose that this individual was the agent. It's the address that's the controlling factor here. And as the court pointed out in Ford versus Pomasan. Does that involve the death of a person and the termination of an agency? Wal-Mart is an apparent authority case, Your Honor, establishing what the test is for apparent authority. Sorry. I'm sorry to keep asking this question, but did it involve the death of a person and the question of whether the death revokes an agency? No. OK, thank you. But again, the question is, who are we serving? We are not serving an individual. In every case that is cited. Have a person accept service. You do. And but we have to know that that the registered agent is no longer the registered agent. Typically, what would be done is that a corporation would change the name of the registered agent if the registered agent changes. What's the evidence that he was ever a registered agent anyway? Well, and again, I point back to Ford versus Pomasan. And if you look at that decision, Your Honor, on the front page, page 363 of the opinion and and the recitation of myself in the record as well. But I think Ford is more controlling here. Pomasan has been is is not dead. I think that's the underlying point here. Pomasan is not dead as a matter of law by virtue of the Ford opinion. It's in a suspended status as a dissolved corporation. Could have been served through through the secretary of state, right? Only if we had known that the registered agent was no longer eligible. What? I'm not sure that I think you can always serve the secretary of state, can't you? I think you're right, Judge. I think that's true in every state in the country. When you said that earlier, I had no reason to dispute that. But we have to know as plaintiffs that the registered agent is no longer the registered agent. We had been serving Pomasan in the manner that is described that occurred in this petition and in the manner that's described in the Ford case for 10 years. And Pomasan had been answering and diligently defending these cases until they challenged that defense in the Ford opinion, which resulted in the jurisdictional challenge that resulted in that opinion in 2006. And Pomasan came and said, look, we don't exist anymore. And the court in New York said, yes, you do. For purposes of your improper notice, you still exist. And we had been serving Pomasan this way, really all the way back to the 90s, actually. And so the question is, were we is there any evidence in the record that the plaintiff looking to our second point, Pomasan is still a corporation that can be sued. And it's the company that's being sued, not an individual. And Mr. Wise has never been the individual who has been a defendant in this case. That did we strictly comply with the service requirements under Arkansas law rule four? And that's really the question here, Judge. Arkansas law rule four, specifically rule four, D. Eight. A.I. You're saying you didn't know that you were doing it as you always were. What how does that work if it's not if we say, no, you didn't serve Pomasan because Mr. Wise is no longer alive. But you say, well, how did we know that? Right. You got this return receipt signed by the doorman. How do we know? Where do we go with that? What how does that allow you to be victorious in this appeal? I think you go to the advanced Kelly case, the Arkansas Supreme Court of 2010 and advanced fiberglass held that. Look, the issue is not whether the registered agent is alive or dead. The issue is whether service was effectuated properly. In that case, service was affected on an employee as opposed to the registered agent. And service was challenged because the registered agent was not served. And the court held that Arkansas is not a restricted service under rule four of the Arkansas summons requirement, which is adopted by rule four point one of the Arkansas Western District local rules. What has to be affected is is service by forwarding a copy of the summons by registered mail return receipt requested to the service address of the company and the agent that we have always understood to be the party to accept service in this case. And I think what the unique twist here that we may all be struggling with is, is that we're talking about serving a dissolved company, a company that's been dissolved since 1986. But whether it's resolved, dissolved or not, the letter was made as an attempt on someone who's not there in both the physical sense and metaphysical. He's not alive. And the only way this works is if giving it to the doorman is somehow an effective substitute under Arkansas law. And I don't see how fiberglass, advanced fiberglass helps you there because they're and it has to be an employee of the company that can accept service. And the doorman didn't work for Polisar. Well, but the doorman had been historically for at least 10 years accepting service for that corporation because that's where the corporation's address was. And we believe that in addition to Howard Weiss, there was another corporate officer residing at that location. Be interpreted in such a way that if anything, he was taking Mr. He was taking the tenants mail and delivering it to the tenant. Right. And there's no tenant. Well, the tenant is Pomasan. That's the green card. The green card says Pomasan and Howard Weiss is the believed agent. And he doesn't know otherwise. We don't know otherwise. I mean, I'm sorry to interrupt, but Pomasan was not the tenant, was it? Well, for all for all the the doorman knew it was for all we knew it was Pomasan doesn't have a factory anymore. They don't have an office anymore. They're dissolved corporations. So they're being served at the location of Howard Weiss. And as the record reflects, with regard to some of the previous proceedings, for example, when Pomasan filed bankruptcy, it did so with Howard Weiss's authority and his affidavit supported that bankruptcy at that address. So it is the corporate address. For all practical purposes, it can only be viewed as the corporate address. There is no other corporate address to serve. And so and that's why the advanced fiberglass case does apply, because if if we're strictly complying, we're serving a company, we're serving that corporate address. This is not an individual that we're serving. The corporation can't die as a matter of the law. The corporation status has been suspended and can be sued for the limited purposes that we did. What are we supposed to do other than what we've been doing for the last 20 years in terms of serving Pomasan pursuant to the outline of the Ford opinion? And that's the point. If we're in strict compliance, if we strictly complied with the rules, and I think that's what Judge Hickey was was trying to point out in her opinion, then there is no abuse of discretion here. And she did not abuse her discretion in finding that service was adequate. If what Pomasan says in their briefing that I think is kind of interesting is that there's no requirement for them to appoint a registered agent. They concede that they don't have a registered agent in their brief. And they say, look, we don't have a registered agent. We're dissolved. We're not required to appoint a registered agent. That's a position they take steadfastly in their brief. Well, if they're not required to appoint a registered agent, then what's the point serving secretary of state? Because they don't have anybody to forward it to, because there's no registered agent. That affects service. Correct. You don't have to forward it. The service is good at that point. Well, the service is good at that point, but in all practical purposes is no good if the secretary of state doesn't have any place to send it. And that's that's good under law. It's a matter of law. It's good. It may be, but it's not going to get an answer in the case. Well, that's good for you. Well, but the point is, the point is, is that why take that route when Ford versus Pomasan describes the situation as a matter of law, that they have been defending these cases for the last 20 years in this manner and been served in answering and vigorously defending these cases, just as they were served in this case. And so it's reasonable and not manifestly unjust or an abuse of discretion for the court to have interpreted the plaintiff's conduct and following the spirit of Ford as really the only guidance that's out there in terms of what to do here. The real problem is, what do I do on the next case now that I know that this service won't be accomplished? What what happens if we if if if the service is if we determine the service is not good, what happens to this case? I think the I think, well, there's a deck action, companion deck action that's on file by the insurance carriers, and they're trying to avoid their claiming insurance is exhausted. But the question is, if it goes back, who do who do I serve? And I suspect what I'm going to have to do or what I what I would think I would have to do is go to New York and sue the estate of Howard Weiss and a declaratory action to figure out who to serve. Because there's nobody on file secretary of state that's going to accomplish that. I guess I could go back, serve secretary of state, get another default judgment, which would be taking me exactly where I'm at here. The point is, is that Ford is really the influencing case here, which makes this case unique and distinctly different because we're dealing with a company that's dissolved and had been dissolved since 1986. And we're dealing with a procedure that had been in place long standing. But I would point out one other point about the service issue and our response and our point that what's that the the entity being served here is Pomason. And every case that is cited by Pomason in their brief relating to defective service deals with service on individuals and persons who are defendants in their individual capacity in the cases in which they've been sued. Howard Weiss was not a defendant in this case in an individual capacity. He was just an agent. He was the wrong agent under New York law, under Arkansas law. If if the agent is the wrong agent, it is the burden and the responsibility of the corporation to to to update the agent issue. It is not my burden to try to go figure out whether Mr. Weiss is alive or dead. And I didn't know that. Equally important is that there was another corporate officer in residence at that location. Patricia Weiss, who was the secretary of the company while it was in existence. And so while Mr. Weiss may have been deceased, there was another individual present that could represent the interest of the corporation. And where else would we go? That in the record established that she was still living at that location where the doorman accepted service. Your specific question as to whether she was still living. I'm not sure whether that exact fact is in the record that her address and her residency and her status as a corporate officer is in the record. But that specific slice of your question, I'm not sure, is in the record, Your Honor. I believe she was living, but I can't say that that that was established affirmatively in the record. Consequently, because Ford, as the outline for this case, is the only map that we have at this point until I reconstruct another one to serve Palmasan. And because we strictly construed with the service requirements under Arkansas rule and the specific point being that the advanced fiberglass case doesn't require restricted service. But that forwarding the summons by registered mail return receipt requested to the corporate address where the services identified is sufficient to establish service dictates that Judge Hickey was correct and did not abuse her discretion in finding that service was strictly complied with. And we respectfully request that Judge Hickey's opinion be upheld. Thank you, Your Honors. Thank you, Mr. Martin. Mr. Quattaro, your rebuttal. Thank you, Your Honors. I have just a few points to make on rebuttal. First of all, Bell's just discussed the Ronagy decision, the 2011 decision from the Arkansas Supreme Court, and argue that this supports their interpretation of Arkansas rule four. I think even a quick look at the facts of that case illustrate that they are just confused on the significance of serving a registered agent under Arkansas law versus serving a general corporate agent in the Ronagy. What? I'm sorry. Versus serving a general corporate agent, as outlined in subdivision D5 of Arkansas rule four. So in the Ronagy decision, plaintiffs attempted to serve the registered agent of a corporation by restricted delivery mail. But as discussed earlier, restricted delivery mail is not required when you're serving a registered agent. All that's required is certified mail return receipt requested. Because of an error of the U.S. Postal Service, the registered agent's employee was permitted to sign the return. The court in Ronagy said this doesn't invalidate service because the plaintiffs, perhaps inadvertently, but in any event, gratuitously selected a more burdensome means of service. And the service as actually affected was proper under the rules. And just not to dwell on this decision too long, but I would point out that on page 15 of the Bell's response brief, they misquote the decision several different ways. And at one point even omit the term registered agent from their quotation. And I think it leaves the court and the reader with a very misleading impression of the relevant rules. Now, Judge Kelly, you asked a question about whether there was any record evidence regarding whether Patricia Weiss was even alive. And the answer is there's not. The only evidence submitted regarding Patricia Weiss came at page 234 of the joint appendix. And this was the printout that opposing counsel attached to one of the papers submitted in the trial court. And not only does this printout show different addresses for Patricia Weiss, in fact, this printout shows Howard Weiss as being alive. So I would say that on its face, it is an unreliable document. Third, regarding the Walmart versus Chris decision on the apparent authority point, I would simply submit to the court that apparent authority cannot be unilaterally created. The decision, the Walmart decision makes clear that the principal must hold out the supposed agent with apparent authority by some action. Here, there's absolutely no record evidence that Pomsan even knew that the doorman existed, let alone held the doorman as an agent of the corporation. Can I ask you the same question I ask opposing counsel? What happens if we determine that service was not sufficient here? What happens to this case? Well, Judge Kelly, that's a good question, because I'm not exactly sure what will happen post disposition of this appeal. I'm not sure what the bells will do. I can say, however, even if the result ended up being the same, say, say that just a default judgment was entered once again, this time with proper statutory authority. I would say that the court would be doing a tremendous service in correcting the lower court precedent in this case, because even if the result ultimately did end up the same in this case, which I don't know to be the case, I think that this decision could cause tremendous harm in future cases, because it really is a judicial outlier. The reason there aren't a lot of cases out there saying that a corporation cannot be served via a dead person is because most people don't try to uphold service in that manner. And so in closing, I would say that the default judgment entered by the trial court is insufficient because it was entered under the wrong statute and a deceased individual was attempted to be served. Counsel for Pomsan learned of the default judgment entered in this case by happenstance and promptly informed the trial court of the fact of Howard Weiss's death. At that point, the trial court should have vacated the default judgment entered against Pomsan as void. By instead upholding it, I submit that the trial court has created a judicial outlier, has reached the erroneous result in this case, and threatens to create significant confusion in future cases. Therefore, Pomsan respectfully requests that the panel reverse the district court's denial of Pomsan's motion to vacate the default judgment and vacate the default judgment rendered against Pomsan. Unless the panel has additional questions, I will rest. I see none. Thank you, Mr. Pitaro. Thank you. Thank you also, Mr. Martin, for your presence before the court today. The briefing that you've submitted will take your case under advisement, render decisions prompt as possible. Thank you.